UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
In re:

ADIRONDACK TIMBER ENTERPRISE, INC.,                Case No. 08-12553
                                                   Chapter 11
                        Debtor(s).

-------------------------------------------------------------
APPEARANCES:

COSTELLO, COONEY & FEARON, PLLC,                   Anthony R. Hanley, Esq.
*Attorneys for FPC Financial, f.s.b., a/k/a Farm Plan*    Jennifer E. Matthews, Esq
Salina Place
205 South Salina Street
Syracuse, New York 13202

GASPAR & SMITH, PLLC                               Yuri J. Gaspar, Esq.
*Attorneys for Debtor*
2577 Main Street
Lake Placid, New York 12946

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the court is the motion filed by FPC Financial, f.s.b. ("Farm Plan") and Deere & Company ("Deere") seeking relief from the automatic stay under 11 U.S.C. §362(d)(1) based upon Farm Plan's lack of adequate protection. Adirondack Timber Enterprise, Inc. ("Debtor") filed opposition to the motion arguing, *inter alia*, that Farm Plan is not a secured creditor, and Deere is barred under a theory of res judicata from seeking additional adequate protection. For the reasons set forth herein, the court denies the motion.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(G) and (L), and 1334

1

**STATEMENT OF FACTS**

Debtor is a privately held corporation organized and in good standing under the laws of the State of New York. Debtor is in the business of planting, maintaining, and selling evergreen trees and tree-related products in upstate New York. Deere is a Delaware corporation authorized to do business in New York, with its principal place of business in the State of Iowa. One facet of Deere's business is selling and leasing farm equipment. Farm Plan, a wholly-owned subsidiary of Deere, is a federal savings bank chartered by the United States.

In 2002, Debtor entered into a revolving line of credit agreement with Farm Plan ("Credit Agreement") promising to repay the extended credit with interest at 12.25 percent per annum. (Gaspar Aff. (No. 40) Ex. C.) The Credit Agreement also granted Farm Plan a purchase money security interest in all merchandise purchased with the line of credit. Thereafter, Debtor purchased goods and services with the line of credit at Giroux Brothers in Plattsburgh and Malone, New York. (Hanley Aff. (No. 37) Ex. A.) Debtor periodically made payments on the line of credit. (Hanley Aff. Ex. A.)

On or about April 30, 2004, Debtor purchased a new JD 6415 Tractor (Serial #398402) and a used JD 640 SL Loader (Serial #038877) (collectively, "Collateral") from Giroux Brothers. This particular purchase was financed by Deere pursuant to the terms of a Loan Contract-Security Agreement between Deere and the Debtor ("Security Agreement") executed the same day. (Hanley Aff. Ex. C.) The Security Agreement indicates that the validity of the security interest shall be controlled by the law of the state where the Collateral is kept and used. Deere filed a UCC-1 financing statement. (Hanley Aff. Ex. C.) The financing statement references the Debtor and the Collateral, and identifies the secured party as "Deere & Company." (Hanley Aff. Ex. C.)

2

Due to economic constraints, Debtor filed a voluntarily Chapter 11 bankruptcy petition on August 1, 2008. The Debtor listed Deere on Schedule D of its petition as a creditor holding a claim in the amount of $17,000 secured by the Collateral. Farm Plan is listed on Schedule F of the petition as a creditor holding an unsecured claim in the amount of $5,100 in connection with credit card purchases. The Debtor continues to operate its business as a debtor-in-possession and maintains control over the Collateral.

Concerned about depreciation of the Collateral, Deere filed a motion on February 19, 2009, requesting relief from the automatic stay in order to repossess and liquidate the Collateral. In its motion, Deere asserts it holds a purchase money security interest in the Collateral pursuant to the Security Agreement. (Hanley Aff. in Supp. of Deere Mot. (No. 27) ¶ 7.) Deere also indicates the amount owed to it by the Debtor in connection with the purchase of the Collateral is $15,579.81, and the Collateral has a fair market value of $29,399.00, which the Debtor did not dispute. (Hanley Aff. in Supp. of Deere Mot. ¶¶ 10, 12; Gaspar Aff. in Opp'n to Deere Mot. (No. 31) ¶ 8.) The parties ultimately resolved the motion with an Adequate Protection Order. The order directs the Debtor to pay Deere an amount equal to its claim of $15,779.81[1] over a term of three years with interest at the parties' contract rate of interest. (No. 35.) The Adequate Protection Order was entered on March 19, 2009.

On April 2, 2009, Farm Plan and Deere filed the pending motion requesting relief from the automatic stay with respect to the Collateral due to Debtor's default under the Credit Agreement and Farm Plan's lack of adequate protection. At the conclusion of oral argument, the

---

[1] In its motion requesting relief from the automatic stay, Deere asserts the amount due from the Debtor under the Security Agreement is $15,579.81. (Hanley Aff. in Supp. of Deere Mot. ¶ 10.) The Adequate Protection Order (No. 35), however, refers to Deere's claim in the amount of $15,779.81. As the order was submitted on the consent of the parties, the court assumes the order is correct.

3

court directed that the parties file memoranda of law in support of their respective positions. Submissions were timely filed, and this matter is now ripe for determination.

## ARGUMENT

Farm Plan and Deere maintain that Farm Plan holds a valid and perfected security interest in the Collateral. The movants assert that pursuant to the plain language of the Security Agreement the Debtor grants a security interest in the Collateral not only to Deere but also to Farm Plan, as an affiliate of Deere. Relying upon New York's Uniform Commercial Code ("UCC") section 9-503(d) and the Official Commentary, movants also contend that Farm Plan's security interest is properly perfected despite the fact that Farm Plan is not listed on the UCC-1 financing statement as a secured party.

The Debtor counters that Farm Plan does not hold a security interest in the Collateral. More specifically, Debtor contends that it never granted a security interest to Farm Plan and, even if such a security interest had been granted, Farm Plan failed to perfect it. Debtor argues that Deere is not Farm Plan's representative as contemplated by New York's UCC section 9-503(d) because Deere did not file the financing statement in a representative capacity for Farm Plan. Rather, Deere filed the financing statement, on behalf of itself, to perfect its security interest in the Collateral as granted in the Security Agreement. Debtor also asserts that the Adequate Protection Order Deere previously obtained from the court is res judicata, and Farm Plan and Deere are barred from seeking additional adequate protection payments with respect to the Collateral and the Security Agreement.

Farm Plan and Deere refute the Debtor's res judicata argument by asserting that the Adequate Protection Order awarded Deere adequate protection payments in connection with its claim secured by the Collateral. In contrast, the current motion seeks adequate protection for

4

Farm Plan in connection with its separate claim that is also secured by the Collateral. Farm Plan and Deere contend that it is undisputed that there is sufficient equity in the Collateral to secure the claims of both Deere and Farm Plan.

## DISCUSSION

*Farm Plan's Security Interest*

It is well settled that while the extent of a debtor's bankruptcy estate is determined under federal law, property interests are defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Pursuant to the terms of the Security Agreement, because the Collateral is kept and used in New York, New York law applies in determining the nature and extent of Farm Plan's interest in the Collateral. Under New York law, the validity of a security interest is determined by looking to the provisions of Article 9 of New York's UCC.[2]

A "security agreement" is an agreement that creates or provides for a security interest. N.Y. U.C.C. § 9-102(a)(73). It is the security agreement which embodies the intentions of the parties. *In re Laminated Veneers Co.,* 471 F.2d 1124, 1125 (2d Cir. 1973). "'Unless the grant of a security interest is contained in the security agreement, there is no security interest.'" *In re Modafferi*, 45 B.R. 370, 371 (S.D.N.Y. 1985) (quoting *In re Marta Coop., Inc.*, 74 Misc.2d 612, 614 (N.Y. County Ct. 1973). The Security Agreement at issue here provides, in relevant part:

> SECURITY AGREEMENT: To secure the obligation evidenced by this contract and any other obligation that I may owe to [Deere] or to [Deere's] affiliates, **I grant [Deere] a Security Interest** in the Goods described above and all parts and accessories now or hereafter incorporated in or on such Goods by way of addition, accession or

---

[2] Revised Article 9 took effect in New York on July 1, 2001. *See* N.Y. U.C.C. § 9-701. Unless otherwise noted, all references to UCC Article 9 in this opinion are to Revised Article 9 as adopted in New York.

5

>   replacement**.  I also grant you a Security Interest** in all proceeds,
> including insurance proceeds and refund of insurance premiums financed
> hereunder.  I agree that all security granted on any other Contract
> between myself and [Deere] or any of [Deere's] affiliates shall also secure
> the obligations described in this Contract.

(Hanley Aff. Ex. B (*emphasis added*).)

When an agreement is clear and complete, the writing should be enforced according to its terms.  *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (citations omitted).  "In the absence of any ambiguity, [the court] look[s] solely to the language used by the parties to discern the contract's meaning." *Id.*  Neither party is asserting that the Security Agreement is ambiguous.  Yet, both parties have presumably looked to the plain language of the Security Agreement and reach opposite conclusions as to its meaning.

The court agrees that the words of the Security Agreement are clear and explicit.  According to the plain meaning of the Security Agreement, the Debtor granted a security interest to Deere and not Farm Plan.  Farm Plan relies upon the references to "[Deere's] affiliates" contained in the portion of the Security Agreement conveying the security interest to support its argument that the security interest somehow extends to Farm Plan.  While the Security Agreement references obligations owed to Deere and Deere's affiliates, a security interest is only expressly conveyed to Deere.

Nowhere in the Security Agreement is there any granting language in favor of "Farm Plan" specifically, or to "Deere's affiliates" generally.  Farm Plan is not a person in whose favor a security interest was created or provided for under the Security Agreement, nor does it meet any of the other definitions of secured party under UCC section 9-102(a)(72).[3]  While the UCC

---

[3]Section 9-102(a)(72) of the New York Uniform Commercial Code provides:
    "Secured party" means:

6

does contemplate "floating collateral" (security interest attaching to after-acquired property) and "floating debt" (collateral securing future advances), there is no provision for "floating creditors." N.Y. U.C.C. § 9-204(a), (c); *see Republic Nat'l Bank of Dallas v. Fitzgerald (In re E.A. Fretz Co.)*, 565 F.2d 366, 369 (5th Cir. 1978). A security agreement executed solely between a debtor and creditor does not grant an affiliate of the creditor a security interest in the collateral. *Id*. Accordingly, the court finds that Farm Plan does not have a security interest in the Collateral.

*Perfection of Security Interest*

Even if the court found Farm Plan holds a security interest in the Collateral, Farm Plan failed to effect perfection of the security interest. As a general rule, a financing statement must be filed to perfect a security interest in personal property. N.Y. U.C.C. § 9-310. The primary purpose of a financing statement is to provide notice to third parties. Whether or not the financing statement in question was filed in the correct filing office is not in dispute. What is in dispute is whether the financing statement in question perfected a security interest in favor of Farm Plan as a secured party. Section 9-502(a) of the UCC provides that in order for a financing statement to be effective it must include (1) the name of the debtor, (2) the name of the secured

---

(A) a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secure is outstanding;
(B) a person that holds an agricultural lien;
(C) a consignor;
(D) a person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold;
(E) a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for; or
(F) a person that holds a security interest arising under Section 2-410, 2-505, 2-711(3), 2-A-508(4), 4-210, or 5-118.
N.Y. U.C.C. § 9-102(a)(72).

7

party or a representative of the secured party; and (3) the collateral covered by the financing statement.  N.Y. U.C.C. § 9-502(a).

> As Judge Howard Schwartzberg expressed in his decision in *In re Modafferi,* 45 B.R. 370 (S.D.N.Y.1985) . . . (1) the requirements for the creation and perfection of a security interest, which, if complied with, will insure that it is superior to the rights and interests of a trustee in bankruptcy, who has a duty to maximize the return for unsecured creditors, are simple and clearly set forth; (2) it is not unreasonable to insist that a creditor who seeks to obtain such a priority status over unsecured creditors in a bankruptcy case comply with these minimal requirements; and (3) establishing a simple and consistent standard to determine whether the creation and perfection requirements of state law in connection with security interests have been met is important to the promotion of many of the underlying policies of the Bankruptcy Code, including the policy of equality of distribution.

*Morin v. Galan* (*In re Lanzatella)*, 254 B.R. 84, 88 (Bankr. W.D.N.Y. 2000).

It is undisputed that Farm Plan is not listed as a secured party on the financing statement as required by section 9-502(a) of the UCC.  Deere is the only creditor mentioned.  Farm Plan claims this omission is not decisive and notes that under UCC section 9-503(d) "failure to indicate the representative capacity of a secured party or representative of a secured party does not affect the sufficiency of a financing statement."  N.Y. U.C.C. § 9-503(d).  Relying upon Official Comment 3 to UCC section 9-503[4] to support its position, Farm Plan asserts that Deere did not have to specifically state on the financing statement that it was acting in the interest of itself and its affiliate, Farm Plan, in order to perfect Farm Plan's security interest in the Collateral.

---

[4] Comment 3 provides the following example:
> Debtor creates a security interest in favor of Bank X, Bank Y, and Bank Z, but not to their representative, the collateral agent (Bank A).  The collateral agent is not itself a secured party . . . however, a financing statement is effective if it names as a secured party Bank A and not the actual secured parties, even if it omits Bank A's representative capacity.

N.Y. U.C.C. § 9-503, cmt. 3.

8

The court disagrees with Farm Plan's interpretation of Official Comment 3.  Under former Article 9, when a loan was made by a group of lenders with one lender acting as agent for the others, issues of disclosure arose when the financing statement listed only the lenders' agent as secured party.  *See Bank Brussels Lambeert v. Credit Lyonnais (Suisse) S.A.*, No. 93 Civ. 6876, 2000 WL 174955, at *2 (S.D.N.Y. Feb.15, 2000); *In re Fried Furniture Corp.*, 293 F. Supp. 92, 93 (E.D.N.Y. 1968), *aff'd*, 407 F.2d 360 (2d Cir. 1969).  Certain changes to the requirements for financing statements under Revised Article 9 were meant to clarify the agency disclosure issues that arose under former Article 9.  *See* N.Y. U.C.C. §§ 9-502(a)(2), 9-503(d).  The example in Comment 3 to UCC section 9-503 illustrates a case where a debtor grants a security interest to a group of secured parties, but not to their representative, the collateral agent.  The agent is not a secured party.  A financing statement, however, is effective if it names as a secured party the collateral agent and not the actual secured parties, even if it omits the collateral agent's representative capacity.

There is no evidence in the record that the purchase money loan made by Deere to the Debtor was a joint loan with Farm Plan, with Deere being designated the representative or collateral agent.  Instead, the record indicates that the claim of Deere against the Debtor is distinct from Farm Plan's claim against the Debtor.  Based on the foregoing, the court finds Farm Plan does not have a perfected security interest in the Collateral.

*Relief From the Automatic Stay*

Farm Plan seeks relief pursuant to § 362(d)(1) of the Bankruptcy Code, which provides:

(d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—
    (1) for cause, including the lack of adequate protection of an *interest in property* of such party in interest.

9

11 U.S.C. § 362(d)(1) (emphasis added).

The burden of proof on a motion to lift the automatic stay is a shifting one. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir. 1990). In order to lift the stay based upon lack of adequate protection, the burden is on the movant to make an initial showing of cause. *Id.* "Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999) (citations omitted).

Adequate protection "'is designed to protect a secured creditor . . . against any decrease in the value of its collateral which may result from depreciation, destruction, or the debtor's use of the collateral.'" *In re R & G Props., Inc*., No. 08-10876, 2009 WL 2043875, at *4 (Bankr. D.Vt. July 6, 2009) (quoting *Volvo Commercial Fin. LLC the Ams. v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.),* 326 B.R. 683, 691-92 (6th Cir. BAP 2005). The concept of adequate protection of an interest in property does not apply to unsecured claims. *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 47-48 (Bankr. S.D.N.Y. 1990). For the reasons stated above, Farm Plan does not hold an interest in the Collateral. Because Farm Plan has not met the initial burden of proving it holds an interest in the Collateral, it cannot establish that it is entitled to adequate protection. As a result, Farm Plan has failed to demonstrate cause under § 362(d)(1).

***Res Judicata***

The Debtor argues, in the alternative, that Deere and Farm Plan are barred from seeking relief from the automatic stay on res judicata grounds. The doctrine of res judicata, or claim preclusion, applies to valid, final judgments on the merits, rendered by courts of competent jurisdiction, which are based on the same cause of action between the same parties. *See*

10

*Eurocrafters, Ltd. v. Vicedomine*, No. 1:04-CV-855, 2005 WL 1260390, at *3 n.3 (N.D.N.Y. May 18, 2005) (citation omitted). Res judicata bars a party from re-litigating matters actually determined in an earlier action, as well as all relevant matters that could have been litigated.

Deere and Farm Plan assert that res judicata does not apply because Deere is not asserting in the current motion that the Debtor is delinquent in its adequate protection payments or that it is entitled to additional adequate protection payments. Rather, movants are seeking adequate protection payments for Farm Plan with respect to its interest in the Collateral. As the court has determined that Farm Plan does not hold a perfected security interest in the Collateral, it need not address the res judicata effect of its March 19, 2009 Adequate Protection Order.

## CONCLUSION

Based on the foregoing, the motion seeking relief from the automatic lift stay is denied.

IT IS SO ORDERED.                    /s/ Robert E. Littlefield, Jr.

April 28 , 2010                      _____
Albany, New York                     Hon. Robert E. Littlefield, Jr.
                                     Chief United States Bankruptcy Judge